NICHOLS v. ANDERSON-CLAYTON CO.—74 S. W. (2d) 382.

Western Section. October 28, 1933.

Petition for Certiorari Denied by Supreme Court, May 19, 1934.

Weakley & Caldwell, of Dyersburg, for appellant.
C. P. Moss, of Dyersburg, for appellee.

SENTER, J. The original bill in this cause filed by complainant seeks to recover of the defendant damages for the alleged breach of a contract growing out of the sale and purchase of 275 bales of cotton alleged to have been sold by complainant to defendant, and the contract canceled or breached by the defendant, resulting in the alleged damages sued for. There was a plea in abatement and also a demurrer by defendant, both of which were overruled, and the defendant filed its answer denying that it was liable to complainant for any sum.

The bill alleges in substance that the agent of the defendant at Dyersburg, Tennessee, contracted with complainant to purchase 275 bales of cotton, the same to be delivered by complainant to the defendant in Memphis, Tennessee; that the terms of the purchase was 37 points off of the New York market, and the sale made on call; that under this arrangement and agreement the price was fixed at $5.95 per hundred pounds of lint cotton. The bill alleged that said cotton was shipped to the defendant in Memphis, and draft drawn for amount, which draft was not paid by defendant, and that the defendant breached its contract by refusing to accept said cotton and pay the draft and by canceling the contract, and that whereupon complainant proceeded to sell the 275 bales of cotton in the open market, receiving therefrom the fair market value, and sustaining a loss or damage represented by the contract price at which it had been sold and the amount received by complainant on a resale of the cotton.

The answer of defendant admits that through its agent at Dyersburg it entered into a contract with complainant for the purchase of 275 bales of cotton; the same having been sold on call at 37 points below the March New York market. The answer further avers in substance that at the time of the transaction between complainant and defendant's agent at Dyersburg the complainant produced samples for 206 bales of the cotton representing that the cotton was in the compress at Dyersburg, and that samples for the remaining bales

would be promptly given to defendant's agent at Dyersburg. The answer further avers that the complainant did not have 275 bales of cotton in the compress at the time he represented to have same, and at the time of the alleged sale, but only had 206 bales in the compress at that time; that the complainant failed to procure and turn over to defendant's said agent the samples for the other 69 bales, as he had agreed to do; that this transaction occurred on November 1, 1932; that on November 4, 1932, and before the price on the cotton had been fixed and determined, and without attaching warehouse receipts, drew a draft on defendant covering the 275 bales of cotton at the price of $5.95 per hundred pounds; and also failed to comply with the contract and agreement by allowing a margin of $5 per bale to be deducted from the draft until the price had been fixed and determined on call. Other averments are contained in the answer by way of justifying the defendant in refusing the cotton and in canceling the order or contract.

The cause was heard before a jury on oral evidence in the probate court of Dyer county, said court having jurisdiction by statute, resulting in the issues of fact submitted being answered in favor of complainant by the jury, and a judgment rendered upon the jury verdict in favor of complainant. A motion for a new trial made by the defendant was overruled and disallowed, and, from the action of the court in overruling its motion for a new trial and rendering judgment against it and in favor of the complainant, the defendant prayed and was granted an appeal to this court, and the appeal has been duly perfected and errors assigned.

The determinative questions made on the appeal are questions of fact in the main. The issues of fact were made up by the direction of the trial judge and submitted to the jury. These issues of fact and the answers thereto by the jury were as follows:

"1. Was there a contract between the complainant and defendant Company for the purchase and sale of 275 bales of cotton?

"A. Yes.

"2. Did the complainant, W. E. Nichols, breach his contract with the defendant Company, Anderson-Clayton Company?

"A. No.

"3. What price was the defendant Company, Anderson-Clayton & Company, to pay the complainant, W. E. Nichols, for the 275 bales of cotton?

"A. $5.95 per hundred lbs.

"4. Did the defendant Company breach their contract?

"A. Yes.

"5. Was the sale of the said 275 bales of cotton to Wiel Bros. Cotton Co. a fair sale and the market price by the complainant, W. E. Nichols?

"A. Yes.

"6. What price did the said 275 bales of cotton bring when resold to Wiel Bros. Cotton Co.?

"A. $5.54 per hundred lbs.

"7. What sum of money, if any, does Anderson-Clayton & Company owe the complainant as damages for their cancellation of the contract for the purchase of 275 bales of cotton from the complainant?

"A. $543.70."

The assignments of error, being numerous, will not be taken up and considered separately. Under the assignments of error it is the first contention of appellant that there was no material evidence to support the verdict of the jury in answering certain issues, and especially issue No. 2, wherein the jury answered that the complainant, W. E. Nichols, had not breached his contract with the defendant, and issue No. 4 that defendant breached its contract with complainant.

■ It is too well settled in appellate court practice in this state to require the citation of authorities that a jury verdict concurred in by the trial judge will not be disturbed on appeal if there is any material evidence to support the verdict.

While there is some conflict in the evidence on certain questions and matters, there is no conflict in the evidence on certain other questions made on this appeal. It appears from the record that the defendant's office at Dyersburg was under the management of Mr. Osborne. On November 1, 1932, complainant called on Mr. Osborne in Dyersburg and proposed to sell 275 bales of cotton. Mr. Osborne agreed to buy 275 bales of cotton from complainant for the defendant Anderson-Clayton Company. At that time the complainant was operating a general store and a cotton gin, and was also buying and selling cotton at a station on the railroad between Alamo and Dyersburg. At the time he called on Mr. Osborne to sell him this cotton, he did not have all the samples with him, but during the day brought in samples from 206 of the bales. The other samples were to be later procured and turned over to Mr. Osborne. The price agreed upon between the parties was 37 points off of the March New York market, on call. This is explained to mean that the complainant, as the seller, would notify the purchaser when he wanted the price fixed, and that the price would be determined by the March New York market at the time the price was fixed, and to be 37 points below the New York market at the time the price would be fixed. The complainant did not furnish the other samples on November 1, but on that date Mr. Osborne mailed to the complainant the memoranda of purchase. This memoranda was made out on a printed form or slip, and is as follows:

"Anderson-Clayton & Company.

"Bought of W. E. Nichols, Nichols, Tennessee, 275 b/c at 37 off March, New York, seller's call.

"Draft on Anderson-Clayton & Company, Memphis, with compress receipts attached to invoice.

"Put per No. 1,600 on invoice.

"Terms: To be drawn for on compress receipts.

"Anderson-Clayton & Company,
"By T. R. Osborne."

There is some conflict in the evidence between Osborne and complainant Nichols on the question as to whether complainant represented to Osborne that all of the 275 bales were then in the compress. But there does not seem to be any conflict in the evidence that complainant did not furnish to Osborne samples but for the 206 bales of the cotton. On November 4 the price was fixed on the call of complainant, which was based on the New York market for the month of March, less 37 points off, which made the price $5.95. There is some conflict in the evidence as to the matter of draft drawn by complainant. He does not seem to know just exactly how the drafts were drawn, but seems to have left this matter to his banker. On November 4 there was presented through the Federal Reserve Bank in Memphis, to the defendant, a draft drawn by complainant on the defendant in Memphis, covering the full amount of the 275 bales, and the gross weight of same, at the price of $5.95 per hundred pounds, amounting to the sum of $7,734.40, which covered the entire amount of the purchase price, but without a deduction of $5 per bale margin. There were some warehouse receipts attached, and some waybills, but not negotiable bills of lading. Whereupon the defendant declined to pay the drafts, and, after communicating with its agent at Dyersburg, Osborne, Osborne called the complainant Nichols and advised him of the situation, and that the drafts would be returned unpaid, because not in compliance with the terms of the purchase. It also appears that the Federal Reserve Bank would not hold the draft. Nichols called on Osborne and was advised that the order had been canceled. This all occurred on November 4. Upon the cancellation of the order by the defendant and its refusal to accept and pay for the cotton, the complainant procured samples and took the same to Memphis for the purpose of making another sale, and then on Monday arranged to sell the cotton on call to Wiel Bros. Cotton Company at 40 points off New York, December, and closed the sale on November 9 at the loss found by the jury.

About these facts there is no controversy or conflict in the evidence.

■ We are constrained to reach the conclusion that the complainant, in making this shipment of 275 bales of cotton to Memphis, and in drawing a draft without the compress receipts attached, and without furnishing to the defendant samples for the remaining 69 bales, breached his contract of sale with the defendant, and that the defendant had the clear right upon such breach to rescind or cancel the contract of purchase.

At the time this draft was drawn and presented, it did not have receipts attached to the invoice and draft. This was one of the

specific conditions of the purchase, nor had the samples for the remaining 69 bales of cotton ever been furnished to defendant's agent at Dyersburg. There is no conflict in the evidence on this question, and therefore it appears from the uncontradicted evidence that complainant first breached the contract.

We are therefore of the opinion that the learned trial judge was in error in denying the defendant's motion for a new trial based on the ground that there was no material evidence to support the finding by the jury that the complainant had not breached his contract with defendant. We are further of the opinion that, because of the failure of the complainant to comply with the contract of sale in the particulars as above set forth, the judgment of the lower court must be reversed and the suit dismissed at the cost of complainant.

In this view of the case, it becomes unnecessary to consider and dispose of the other assignments of error. The cost of the cause, including the cost of this appeal, will be paid by complainant and sureties on the cost bond.

Anderson and Ketchum, JJ., concur.